IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN M. WYATT and KAREN LANDINO,   )
                                    )
            Plaintiffs,             )
                                    )
    vs.                             )    Case No. 07 C 4366
                                    )
NISHAY SANAN,                       )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Wyatt and Karen Landino have filed a *pro se* lawsuit against Nishay Sanan, a Chicago attorney. The Court's jurisdiction is based on diversity of citizenship. Sanan has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court dismisses certain of plaintiffs' claims on their merits and the rest of them for lack of supplemental jurisdiction.

### Facts

In deciding Sanan's motion, the Court accepts as true all of plaintiffs' factual allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).

Wyatt and Landino allege they consulted Sanan for legal advice after Wyatt was charged in a federal criminal case in the Southern District of Illinois. Compl. ¶ 7. Plaintiffs allege that they retained Sanan to represent Wyatt in the

case. *Id.* ¶ 9. There was no written fee agreement; Sanan orally quoted fees at various stages of the litigation. *Id.* ¶¶ 9-10. Plaintiffs allege that they paid Sanan $25,000 to pursue a motion to suppress evidence in the trial court, another $25,000 for an appeal, $25,000 for a petition for certiorari ($10,000 up front and the other $15,000 to be paid once Sanan filed the petition), and $5,800 for expenses. *Id.* ¶ 10.

Plaintiffs allege that Sanan advised them that Wyatt's best course was to negotiate a conditional guilty plea, preserving his right to challenge the trial court's ruling on various motions - presumably including the motion to suppress. *Id.* ¶ 10e. They say Sanan "guaranteed" he would prevail on all legal issues and said he had obtained outstanding results in similar cases. *Id.* ¶¶ 11, 33d & i.

Wyatt followed what he alleges was Sanan's advice and entered a conditional plea of guilty. The trial judge sentenced Wyatt to 22 years in prison. Plaintiffs allege this is more than the sentence Wyatt would have received had he gone to trial - supposedly 10 years. *Id.* ¶ 12. They allege that Sanan "was totally unprepared and unknowledgeable how to handle critical aspects of Wyatt's case and failed to advise Wyatt of the possibility of a maximum sentence of 22 years" if he pled guilty. *Id.* ¶¶ 24, 32. Plaintiffs do not describe how this occurred, but from what the Court can ascertain from the complaint and the Seventh Circuit's decision in Wyatt's case, it had to do with whether a prior conviction for escape constituted a crime of violence that

rendered Wyatt a "career offender" under the Sentencing Guidelines. *See id.* ¶ 57e.

Plaintiffs allege that Sanan guaranteed that he would win the case on appeal. *Id.* ¶ 29. The court of appeals, however, affirmed the judgment. *Id.* ¶ 13. At that point, plaintiffs say, Sanan solicited them to retain him to petition the Supreme Court for certiorari, saying that Wyatt had a great chance of winning and that he (Sanan) had extensive experience in Supreme Court appeals - a statement plaintiffs say was false. *Id.* ¶¶ 13-14. Though plaintiffs say they paid Sanan the initial $10,000 of the fee he quoted for the petition for certiorari, he did not file the promised petition in timely fashion. *Id.* ¶¶ 15, 19. Plaintiffs say Sanan admitted to them in August 2005 that he had missed the filing deadline. *Id.* ¶ 20. Plaintiffs then requested a return of the $10,000 and Wyatt's legal papers, as well as a copy of the unfiled petition. *Id.* ¶ 21. They allege that Sanan returned the $10,000 and some of the legal papers but never provided a copy of the draft petition. *Id.* ¶ 22.

Plaintiffs allege that if Sanan had advised Wyatt that he could get a 22 year sentence after the plea but would face only 10 years by going to trial, he would not have pled guilty.[1] *Id.* ¶ 23. They also allege that Sanan was "totally unprepared and unknowledgeable" about how to handle the case. *Id.* ¶ 24. As a result, plaintiffs allege, Wyatt made an unknowing and unintelligent decision

---

[1] The Court does not know whether it is accurate that Wyatt would have faced only a ten year sentence had he gone to trial but takes the allegation as true for purposes of the present motion.

to enter into an unfavorable plea agreement. *Id.* ¶ 25.

Plaintiffs allege that Sanan owed them a duty to provide competent legal services as well as a fiduciary duty, both of which he breached. *Id.* ¶¶ 26-33. In counts one through four of their complaint, they have sued Sanan for breach of contract, breach of fiduciary duty, professional negligence, and reckless conduct. Count five is a claim for fraud and unjust enrichment. It is unclear whether it is brought exclusively on behalf of Landino or on behalf of both plaintiffs. Because courts must construe liberally the pleadings of *pro se* litigants, *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), the Court reads count five as having been made on behalf of both plaintiffs. In count five, plaintiffs allege that Sanan advised them that he was a highly experienced criminal defense attorney; he would secure an acquittal or at most a minor prison sentence; he would be able to get any sentence overturned on appeal; and he was experienced in appealing cases to the Supreme Court. *Id.* ¶¶ 57a-e. They also allege that the fees Sanan quoted were unreasonable and excessive. *Id.* ¶ 57f. But for these statements, plaintiffs say, they would not have paid the fees that Sanan quoted. *Id.* ¶ 58.

Sanan has moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). He contends that under Illinois law, which governs plaintiffs' claims, Landino has no viable claim because she had no attorney-client relationship with Sanan; all of Wyatt's claims amount to claims of legal malpractice; and Wyatt has not alleged and cannot allege that he is

innocent of the crime to which he pled guilty, which Sanan argues is an essential predicate of a legal malpractice claim. Sanan argues that although plaintiffs' allegations of overcharging of legal fees might give rise to a viable legal claim, the Court lacks jurisdiction over that claim if and when the malpractice-related claims are dismissed.

In addition to the allegations of the complaint, the Court also considers the decision of the court of appeals affirming Wyatt's conviction and sentence on appeal. In resolving a motion to dismiss for failure to state a claim, a court may take judicial notice of matters in the public record, including judicial decisions, without converting the motion to a motion for summary judgment. *See, e.g., Anderson v. Simon*, 217 F.2d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 294 (7th Cir. 1994).

Following imposition of sentence, Wyatt appealed to the Seventh Circuit, with Sanan serving as his lawyer. *United States v. Wyatt*, No. 04-3314, 133 Fed. Appx. 310 (7th Cir. 2005). As indicated earlier, Wyatt had entered a conditional guilty plea that allowed him to challenge on appeal the denial of his motion to suppress evidence. Most of the Seventh Circuit's decision concerned the motion to suppress. *Id.* at 311-16. Wyatt also asserted two sentencing-related issues: he argued that he had been inappropriately categorized as a career offender under the Sentencing Guidelines, and he contended that the career offender guideline could not be applied to him consistent with *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220

(2005), because the underlying facts had not been found by a jury. The Seventh Circuit rejected both arguments. First, it ruled, consistent with several of its prior rulings, that Wyatt's prior conviction for escape constituted a crime of violence within the meaning of the applicable Guidelines. *Wyatt*, 133 Fed. Appx. at 316. Second, with regard to the *Blakely-Booker* issue, the court noted that the trial judge had anticipated the possibility of *Booker* and had concluded that even if the Sentencing Guidelines were interpreted to be advisory rather than mandatory, he would have imposed the same sentence. *See id.* at 313. The Seventh Circuit reviewed the alternative, advisory-Guidelines sentence for reasonableness and determined that it was a reasonable sentence. *Id.* at 316.

## Discussion

Plaintiffs' complaints largely arise from their allegations that Sanan misrepresented his legal skills and performed inadequately. They also appear to allege, however, that Sanan overcharged them. The Court will handle each set of allegations separately.

1. **Claims of inadequate performance and misrepresentation of skills**

All of plaintiffs' claims arising from Sanan's allegedly inadequate performance as an attorney and misrepresentation of his skills must be examined under the standards that apply to legal malpractice claims, even though plaintiffs have attached a variety of labels to those claims. First, though count one is denominated as a claim for breach of contract and count three is denominated as a tort claim, both amount to the same claim - a claim

6

for legal malpractice - because both are premised on Sanan's allegedly deficient legal services.  *See, e.g., Davis v. Loftus*, 334 Ill. App. 3d 761, 767, 778 N.E.2d 1144, 1149-50 (2002).  The same is true of count four, in which plaintiffs allege that Sanan failed to perform legal services competently in connection with his undertaking to file a petition for certiorari.  A claim against a lawyer for breach of fiduciary duty, like the claim plaintiffs make in count two, likewise "falls under the rubric of legal malpractice" and is assessed under the same standards as a legal malpractice claim.  *See, e.g., Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351, 736 N.E.2d 145, 155 (2000).

Finally, a claim that a lawyer fraudulently induced a prospective client to enter into an attorney-client relationship - the claim that plaintiffs make in count five - is considered the equivalent of a legal malpractice claim and is assessed under the same standards.  *See, e.g., Kennedy v. Grimsley*, 361 Ill. App. 3d 511, 514, 837 N.E.2d 131, 133 (2005).  In *Kennedy*, as in the present case, the plaintiff alleged that the defendant attorney made misrepresentations regarding his skill and expertise to induce her to retain him as legal counsel.  The court concluded that "the gravamen of plaintiff's claim is one for legal malpractice, not fraud.  The nature of the behavior alleged concerns defendant's actions and statements in the creation of the attorney-client relationship, the necessary predicate to any malpractice action." *Id.* at 514, 837 N.E.2d at 134.

The Court agrees with Sanan that Landino has no viable legal claim

against him arising from these malpractice-type allegations, because his attorney-client relationship was with Wyatt alone. *See Pelham v. Greisheimer*, 92 Ill. 2d 13, 19, 440 N.E.2d 96, 99 (1982). A non-client may bring a legal malpractice claim against a lawyer only if the non-client alleges that the purpose and intent of the attorney-client relationship was to benefit or influence the non-client, or that the attorney voluntarily undertook to perform a service with foreseeable consequences to the non-client, who justifiably relied on the lawyer's undertaking. *Id.* at 21-22, 440 N.E.2d at 99-100. In this case, Landino alleges nothing that would bring the malpractice-type claims she has asserted within either of these categories.

This leaves for determination Wyatt's malpractice-type claims in counts one through five. In those claims, Wyatt appears to attack Sanan's advice and conduct relating to Wyatt's decision to plead guilty as well as Sanan's actions and advice concerning the sentencing phase of the case. More specifically, Wyatt alleges that he pled guilty as a results of Sanan's deficient advice about the likely consequences and the potential for success on appeal, and that he ended up with a greater sentence than he should have, because of Sanan's inadequate legal work at the trial, appellate, and Supreme Court levels.

Under Illinois law, when a malpractice suit grows out of a criminal conviction, and the client seeks to attribute the conviction to the attorney's conduct, the plaintiff must prove that he was actually innocent of the crime charged. *See, e.g., Winniczek v. Nagelberg*, 394 F.3d 505, 507 (7th Cir. 2005)

(applying Illinois law); *see also Owens*, 316 Ill. App. 3d at 351, 736 N.E.2d at 155 (applying same requirement to breach of fiduciary duty claim against attorney). The rationale for imposing this requirement is that a person convicted of a crime due to his attorney's inadequate representation has an alternative remedy, namely the opportunity to have the criminal judgment vacated on the ground that his attorney failed to measure up to constitutional standards. *See id.* at 507-08. In the present situation, for example, Wyatt had the opportunity to file a motion before the trial judge pursuant to 28 U.S.C. § 2255 seeking to vacate his conviction and/or sentence on the ground of ineffective assistance of counsel.

For this reason, to state a claim for legal malpractice concerning his guilty plea or any appellate challenge to the finding of guilt, Wyatt must allege that he was actually innocent of the criminal charge that was made against him. Wyatt has made no such allegation, nor could he, in light of his admission, via his guilty plea, that he had committed the crime.[2] *See Levine v. Kling*, 123 F.3d 580, 583 (7th Cir. 1997).

Wyatt alleges, however, not just that he pled guilty due to Sanan's

---

[2] Plaintiffs object to consideration of the materials from Wyatt's criminal case that Sanan attached to his motion - including the plea agreement and transcripts of the guilty plea and sentencing hearings, on the ground that they fall outside what a court properly may consider on a Rule 12(b)(6) motion. The Court has already explained why it is appropriate to consider the Seventh Circuit decision affirming Wyatt's conviction and sentence. And even without the other materials, the Court certainly may take into account Wyatt's admission in the complaint that he pled guilty, *see, e.g.*, Compl. ¶ 12, and the requirements under Federal Rule of Criminal Procedure 11 that guilty pleas be made under oath and that the court determine that the defendant is pleading guilty voluntarily and that a factual basis exists for a guilty plea. *See* Fed. R. Crim. P. 11(b)(1) - (3).

9

ineffective assistance, but that he received a significantly enhanced penalty as compared with what he would have received had he gone to trial. Though Illinois law on this particular subject is sparse, the Illinois Appellate Court rejected a similar argument in *Paulsen v. Cochran*, 356 Ill. App. 3d 354, 826 N.E.2d 526 (2005). In *Paulsen*, the plaintiff had pled guilty to a crime and was sentenced to a prison term pursuant to a plea agreement in which he acknowledged that a prison sentence was a possibility, he was pleading guilty voluntarily, and had discussed the agreement with his lawyer. He then sued the lawyer, alleging (among other things) that if the lawyer had done a proper job, the trial judge would have imposed a sentence of probation. The appellate court affirmed the dismissal of the plaintiff's complaint based on the "actual innocence" rule. It stated that "[a] plaintiff who wants to sue his former criminal defense counsel for malpractice must prove his innocence - a requirement he cannot meet unless his conviction has been overturned." *Id.* at 359, 826 N.E.2d at 530 (citing *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 822, 695 N.E.2d 1288, 1290 (1998); *Levine*, 123 F.3d at 583). The court noted the possible existence of an exception in a situation where the criminal defense attorney had intentionally worked, contrary to his client's interests, to secure the client's conviction. *Id.* at 360, 826 N.E.2d at 531. But that possibility aside, the court stated, "Illinois courts have reaffirmed their commitment to the general rule" requiring actual innocence. *Id.*

The plaintiff in *Paulsen* argued that the "actual innocence" cases were not

dispositive of cases like his, because he was suing on the ground that his attorney's malpractice resulted in a higher sentence, not that it resulted in the underlying conviction. The plaintiff cited three cases from outside Illinois to support his argument. The court concluded, however, that each of those cases was from a state that, unlike Illinois, does not follow the actual innocence rule in the first place. *Id.* at 363, 826 N.E.2d at 533. By contrast, in states following the actual innocence rule, the court found no exception to the rule for cases in which the plaintiff challenges only the attorney's conduct vis-a-vis the sentence imposed. *Id.* (citing cases). The court also noted that the record reflected that the plaintiff had voluntarily signed the plea agreement and discussed it with his attorney, and that the plaintiff had no viable argument that the sentence imposed exceeded statutory limits. *Id.* at 363, 826 N.E.2d at 533-34. Under the circumstances, the court said, the plaintiff could not sustain a contention that he expected something better than what was provided in the plea agreement - which made no guarantee regarding the sentence. *Id.* at 364, 826 N.E.2d at 534. For these reasons, the court concluded, the trial judge had "properly applied the actual innocence rule in dismissing this case. The facts here do not warrant the establishment of another exception to the rule beyond the 'betrayal' exception . . . ." *Id.* Although *Paulsen* is not a decision by the Illinois Supreme Court, there is no basis to believe that court would depart from the actual innocence rule in this situation - just as courts in other states that follow the actual innocence rule have declined to create an exception for

cases in which the attorney's malpractice is claimed to have affected the sentence, rather than the underlying conviction.

The Court notes, finally, that in *Winniczek*, the Seventh Circuit assumed that there might be an exception to the actual innocence rule for a case in which, although the defendant is guilty, he received an unlawful penalty. *Winniczek*, 394 F.3d at 507. Even if such an exception exists, it does not assist Wyatt. His claim is that the sentence is excessive, not that it is illegal; any claim that the sentence was illegal is foreclosed by the Seventh Circuit's rejection of his *Booker* argument.

For these reasons, the Court dismisses all of plaintiffs' claims arising from Sanan's allegedly inadequate performance and misrepresentation of his skills. Given the basis for the Court's ruling, this is a determination on the merits of plaintiffs' claims, not just the sufficiency of pleading.

2. **Claims of overcharge or excessive fees**

Sanan acknowledges that plaintiffs' claims sound, in part, as breach of contract claims for overcharges of legal fees, and he concedes that persons in plaintiffs' position may assert a breach of contract claim for recovery of overcharges. *See* Def. Reply at 9; *Schweihs v. Davis, Friedman, Zavitt, Kane & MacRae*, 344 Ill. App. 3d 493, 502, 800 N.E.2d 448, 455 (2003); *Coughlin v. SeRine*, 154 Ill. App. 3d 510, 514, 507 N.E.2d 505, 508-09 (1987). Though such a claim is still a legal malpractice claim, given the lawyer's duty not to charge an excessive fee, *see Coughlin*, 154 Ill. App. 3d at 514, 507 N.E.2d at

509, a claim of this type is not subject to the actual innocence rule. *See Winniczek*, 394 F.3d at 510.

As a result, the Court may not dismiss for failure to state a claim any overcharge-related claims that plaintiffs have made. Sanan argues, however, that plaintiffs may not pursue any overcharge-related claims in federal court because the most they possibly could recover is an amount less than the jurisdictional threshold of $75,000 for diversity-of-citizenship cases. Sanan thus asks the Court to dismiss the overcharge-related claims for lack of supplemental jurisdiction.

As noted earlier, plaintiffs allege that they paid Sanan $25,000 for proceedings in the trial court, another $25,000 for the appeal to the Seventh Circuit, and $10,000 for the petition for certiorari (the remaining $15,000 for that stage of the case never came due), plus expenses of $5,800. The total is $65,800, but because Sanan refunded $10,000, the net amount plaintiffs claim to be out of pocket is $55,800.

This same amount, $55,800, is the most plaintiffs can recover on their overcharge-related claims. They cannot recover punitive damages on those claims. Because the overcharge-related claims are, as the Court has stated, claims of malpractice (no matter how plaintiffs have entitled them), they must be assessed under the legal rules applicable to malpractice claims. One of those rules is Illinois' statutory prohibition against recovery of punitive damages in legal malpractice cases. 735 ILCS 5/2-1115. Under the statute, it

does not matter whether the plaintiff calls his claim a tort claim, a contract claim, or some other sort of claim. *Id.*

Because the maximum amount plaintiffs possibly can recover (even if prejudgment interest is included) is below the jurisdictional threshold for diversity suits, the Court would not have subject matter jurisdiction of the overcharge-related claims had plaintiffs brought them as a stand-alone lawsuit. Rather, the Court's jurisdiction exists only under 28 U.S.C. § 1367(a), which provides that in any civil case in which a federal district court has original jurisdiction, the court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

Now that the Court has dismissed all of the claims that provided the basis for federal jurisdiction in the first instance, under the supplemental jurisdiction statute the Court has authority to dismiss the remaining claims for lack of jurisdiction, which in effect would require the plaintiffs to pursue those claims in state court. 28 U.S.C. § 1367(a)(3). Dismissal is the default rule when, as in this case, the claims that provided the basis for original jurisdiction are dismissed before trial. *See, e.g., Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). The Court sees no basis to depart from that practice in this case. The case is at a very early stage, no discovery has been conducted, and little of the Court's time and attention has been devoted to the claims that remain for adjudication. Plaintiffs have identified no reason why

the remaining claims, all of which will be decided pursuant to state law, should be adjudicated in federal court.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 23]. The Clerk is directed to enter judgment dismissing plaintiffs' claims on the merits to the extent they rely on allegations of deficient advice and/or performance, and dismissing their claims for lack of supplemental jurisdiction to the extent rely on allegations of overcharging. Plaintiffs' motion for summary judgment, which was filed on April 7, 2008 and is noticed for presentment on May 1, 2008, is terminated as moot [docket no. 33], and the May 1 hearing date is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 22, 2008